IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Curtis Spencer, individually, and as the Personal Representative of the Estate of Thomas R. Spencer,<br><br>    Plaintiff,<br><br>  vs.<br><br>Frontier Insurance Company,<br><br>    Defendant. | Case No.: 3:02-3431-JFA<br><br>**ORDER** |

This matter is before the court for a determination of damages available to plaintiff Curtis Spencer, individually, and as the Personal Representative of the Estate of Thomas R. Spencer.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, his late father, and Cameron M. Evans, a non-party to the action, sold their business to CT Acquisition Corp. ("CTAC") pursuant to a Stock Purchase Agreement ("Agreement") dated September 3, 1999. The Agreement provided that of the $4,350,000 purchase price, $3,150,000 would be paid in cash and the remaining $1,200,000 would be paid over time pursuant to a promissory note. Specifically, CTAC delivered a $1,200,000 five-year interest-only balloon note ("Note") and a surety bond ("Bond") that made Frontier Insurance Company ("Frontier" or defendant) jointly and severally liable with CTAC in the event of default. CTAC subsequently defaulted on the Note, and Frontier refused plaintiff's

demand for payment under the Bond. This lawsuit followed. Ultimately, the court granted summary judgment against defendant as to liability by order dated February 10, 2006 [doc. # 83]. As neither party requested a jury trial, the court held a bench trial on March 22, 2006 to determine the proper measure of damages to be awarded to plaintiff.

For the reasons stated below, the court awards plaintiff damages in the amount of $1,559,256.78.

II.     FINDINGS OF FACT

After receiving the testimony, carefully considering all the evidence, weighing the credibility of the witnesses, reviewing the exhibits and briefs, and studying the applicable law, this court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52. The court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

Under the Note, the purchase price payments were allocated to the sellers of the business according to the following percentages: Thomas R. Spencer = 52.20%, Curtis M. Spencer = 24.61%, and Cameron M. Evans = 23.19%. Originally a named plaintiff in this suit, Thomas R. Spencer passed away during the pendency of this action, and, on January 5, 2006, this court granted Curtis M. Spencer's motion to be substituted as Trustee of the Thomas R. Spencer Trust as a party in this action. It is undisputed that plaintiff, individually and as Trustee, is entitled to a proportionate share of 76.81% of the total amounts owed under

the Note and Bond. Therefore, the court finds that, pursuant to its obligations under the Bond, defendant owes plaintiff $921,720, or 76.81% of the $1,200,000 principal amount of the Note.

There are two remaining issues to be decided by the court in determining the appropriate measure of damages: (A) the calculation of interest and (B) the availability of attorney's fees.

### A.   INTEREST CALCULATION

#### 1.   TREATMENT OF INTEREST PAYMENTS

The parties agree that the interest-only payments under the Note were generally made up until the date of default, June 1, 2002.[1] The testimony presented at trial demonstrated that beginning in January 2000 and continuing until the date of default, CTAC paid approximately twenty-eight (28) interest payments of $8,000 each. Of this amount, plaintiff received only a partial, proportionate share as discussed more fully above. In relying on language contained in the Bond that the "Initial Amount shall be automatically reduced by any amounts paid," defendant maintains that the interest payments made by CTAC should reduce defendant's liability under the Bond. Plaintiff argues that the Bond provision applies only to payments of principal made prior to the default, and because no such principal payments were made, that defendant's liability should not be reduced by any interest payments CTAC made.

---

[1] Defendant has not contested the date of default, and therefore, the court accepts June 1, 2002 as the applicable date for the calculation of interest in its determination of damages.

The court finds plaintiff's interpretation of the relevant Bond provision persuasive. Paragraph four of the Bond states that "in the event of a default under the Agreement, Surety shall become liable for the immediate payment to Obligee of a specific sum equal to the total of all amounts due or to become due under the Agreement which have not been paid to Obligee." The court finds that it was the clear intention of the parties as reflected by the documents and the testimony presented at the bench trial that the Bond secure CTAC's obligation under the Note. However, defendant's interpretation of the Bond provision would require the court to ignore the clear and unambiguous language in the Bond obligating defendant for "all amounts due or to become due." Therefore, it cannot follow that the value of the Bond should be reduced below the principal amount due under the Note by intervening interest-only payments.[2] "Documents will be interpreted so as to give effect to all of their provisions, if practical." *Reyhani v. Stone Creek Cove Condominium II*, 329 S.C. 206, 2121, 494 S.E.2d 465, 468 (Ct. App. 1997). Having found that the amount of defendant's liability under the Bond should not be reduced by the interest-only payments made, the court must now decide the appropriate calculation of interest to be applied to the principal amount owed to plaintiff.

2. INTEREST RATE

Plaintiff argues that the "Default Interest Rate" of 10% per annum as provided in the

---

[2] Independently, the court notes that defendant failed to offer evidence by way of affidavit or testimony as to the amount of payments allegedly made to plaintiff by CTAC, the percentage of interest payments actually paid to plaintiff in this case, or the present value calculation of those amounts.

4

Note must be applied to the principal balance from the date of default. Plaintiff states the default interest rate of 10% contemplated an additional 2% to be added to the ordinary contracted rate of 8%. Defendant counters that neither the Bond nor the Agreement provide for a penalty interest rate of 10%. Defendant argues, because the Note had not been executed when the Bond was issued, that it did not agree to the default interest rate and should not be made liable for it.

The court previously held in its order granting summary judgment that the promissory note was part of the agreement secured by the Bond. This finding was supported by, among other things, the plain language of the Agreement that references the Bond and the Note: "The Note shall be secured by a Surety Bond issued by Frontier Insurance Company . . . in the face amount of One Million Two Hundred Thousand Dollars ($1,200,000) . . . ." Therefore, the court finds that Section 1.3 of the Note unambiguously provides that in the event of default, an increased rate of interest shall become due and payable. This "Default Interest Rate" is calculated at 10% per annum.

The court rejects defendant's assertion that it should not be held liable for the increased rate of interest provided by the Note simply because the Note was technically executed three days after the issuance of the Bond. The parties certainly contemplated that a promissory note would be signed at closing, as evidenced by the language in Section 3.1(a)(ii) of the Agreement: "Buyer will deliver to Sellers at Closing its Promissory Note. . . ." If defendant had wanted the Note to have been executed contemporaneously with the Bond, it could have

5

required that it be done so. Defendant cannot now be heard to complain that it did not agree to the terms of the Note after having issued a Bond securing its payment. The court is persuaded by the authority cited by plaintiff in its brief that a sophisticated entity, such as defendant, is charged with the responsibility of being aware of the contents of documents to which it becomes obligated. *See American Federal Bank, FSB v. Parker*, 392 S.E.2d 798 (S.C. App. 1990); *Regions Bank v. Schmauch*, 582 S.E.2d 432 (S.C. App. 2003). Therefore, the court awards interest payable on the principal balance of $921,720.00 from the date of default at a rate of 10% per annum.

Plaintiff has submitted an affidavit setting forth the principal and interest calculation up to March 22, 2006 as being $1,325,626.29, with a per diem rate of $363.19 for each day thereafter. The court adopts plaintiff's interest calculation and awards damages in the amount of the principal balance at default owed to plaintiff, $921,720.00, plus interest of $403,906.29, for a total as of March 22, 2006 of $1,325,626.29. Additionally, as of the date of this order, nine days of the per diem rate should be added. Therefore, defendant is liable to plaintiff for a total of $1,328,895.00 in principal and accrued interest.

    B.    ATTORNEY'S FEES

Plaintiff seeks to be reimbursed his attorney's fees and costs incurred in this matter. In support of his request for attorney's fees, plaintiff has submitted the affidavit ("Affidavit") of his attorney David C. Holler of Lee, Erter, Wilson, James, Holler & Smith, LLC ("Lee Erter") in Sumter, South Carolina. Section 1.3 of the Note provides that "all costs of

collection, including, but not limited to, reasonable attorney's fees" are to be paid in the event of default. As the court has previously found that the Note was incorporated into and secured by the Bond issued by defendant, reasonable attorney's fees incurred by plaintiff are recoverable.

The United States Court of Appeals for the Fourth Circuit has directed that, in arriving at a determination of reasonable attorney's fees in any case in which a determination is necessary, the following factors must be considered:

1) the time and labor expended;
2) the novelty and difficulty of the questions raised;
3) the skill required to properly perform the legal services rendered;
4) the attorney's opportunity costs in pressing the instant litigation;
5) the customary fee for like work;
6) the attorney's expectations at the outset of the litigation;
7) the time limitations imposed by the client or circumstances;
8) the amount in controversy and the results obtained;
9) the experience, reputation, and ability of the attorney;
10) the undesirability of the case within the legal community in which the suit arose;
11) the nature and length of the professional relationship between the attorney and his or her client;
12) attorney's fees awards in similar cases.

*Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). In order to provide for effective appellate review, the district court is required to make detailed factual findings in support of its conclusion. *Id.* at 226.

7

Considering the twelve *Barber* factors outlined above in order, the court finds that:

1) Plaintiff's South Carolina counsel, Lee Erter, has expended 995 attorney hours on this case.

2) Although the subject matter of this litigation appears relatively straightforward, the procedural obstacles related to insurer liquidation and rehabilitation have been complex.

3) Because of the difficulties noted above, considerable skill was required to properly handle the legal issues related to liquidation and rehabilitation involved in this case.

4) Mr. Holler states in his Affidavit that his firm has foregone other income-producing matters in order to work on this case.

5) Plaintiff's attorneys accepted this case on a 40% contingency fee, which is customary in cases such as this where there is great potential for an inability to collect on any judgment rendered.

6) Plaintiff's attorneys anticipated a very high risk of an unfavorable outcome based on the defendant's insolvency.

7) No unusual time limitations were imposed by this case.

8) The amount in controversy exceeded $1,500,000, and the result obtained was favorable by way of summary judgment as to liability.

9) Mr. Holler has been a member in good standing of the South Carolina Bar since

1991, the North Carolina Bar since 1993, and the Georgia Bar since 1992. For the past fifteen years, he has practiced in the area of complex civil litigation, among other areas. Mr. Holler's reputation in the legal community is excellent, and the court finds his work on this matter to be commendable.

10) Cases such as this against an insolvent defendant are generally regarded as undesirable in the legal community.

11) The court is informed that the relationship of the law firm and the client's family business extends back to middle of the nineteenth century.

12) The contingent nature of the fee justified a higher award than one taken on an hourly basis due to the possibility that no fee will be earned in some contingent fee cases.

In his Affidavit, Mr. Holler testifies that he has charged in excess of $300 per hour on matters such as the case at bar, excluding the added issue of defendant's rehabilitation. The court finds as reasonable the following hourly rates for partners, associates, and paralegals, respectively on this matter: $250, $150, and $65.

Mr. Holler's Affidavit reflects the following fees charged by Lee Erter:

| | |
|---|---|
| Partners: 980 hours x $250/hour = | $245,000.00 |
| Associate: 15 hours x $150/hour = | $2,250.00 |
| Paralegal: 45 hours x $65/hour = | $2,925.00 |
| **Total Fees:** | **$250,175.00** |

Considering each of the *Barber* factors as applied to this case, the court concludes that an award of the fees charged by Lee Erter, discounted ten percent (10%) to account for inefficiencies, is fair, just and reasonable.

In addition, plaintiff has submitted sufficient evidence to support the decision to attempt to intervene in the Indiana action filed by defendant to support an award of its Indiana counsel's fees. The Affidavit signed by Mr. Holler states that the law firm of Lewis & Kappes in Indianapolis, Indiana, and attorney James E. Zaccola served as local counsel in that action. Therefore, the court awards $2,025.00 plus $43.20 in costs charged plaintiff by Indiana counsel.

Finally, Mr. Holler attests that defendant's service of a Notice of Determination upon plaintiff forced plaintiff to hire local counsel in New York to appear and contest defendant's disallowance of the claim at issue. Attorney Michael Davidoff of Drew, Davidoff & Edwards, LLP of Monticello, New York was hired at a rate of $250 per hour to pursue that matter. The court finds that an award of $2,500 representing the non-refundable retainer paid by plaintiff was reasonable and necessary to protect his claim for payment made in the present case.

Therefore, the total attorney's fees and costs plaintiff incurred in this and related actions are as follows:

        Lee Erter:        $225,793.58

                      ($225,157.50 in fees plus $636.08 in costs)

        Indiana Counsel:        $2,068.20

|  |  |
|---|---|
| New York Counsel: | $2,500.00 |
| **Total:** | **$230,361.78** |

Therefore, the court awards plaintiff $230,361.78 in attorney's fees and costs to be paid by defendant.

III. CONCLUSIONS OF LAW

The court concludes, pursuant to Fed. R. Civ. P. 52, that the amount of defendant's liability under the Bond should not be reduced by the interest-only payments made. Additionally, the court concludes that the "Default Interest Rate" of 10% per annum as provided in the Note must be applied to the principal balance from the date of default, as the Note was part of the agreement secured by the Bond. Finally, the court finds that because the Note was incorporated into and secured by the Bond issued by defendant, plaintiff is also entitled to recover his reasonable attorney's fees in this action and related actions.

IV. CONCLUSION

Accordingly, for the reasons stated above and pursuant to Fed. R. Civ. P. 54, the court directs the clerk of court to enter judgment against defendant and in favor of plaintiff in the total amount of $1,559,256.78, including $1,328,895.00 in principal and accrued interest (which shall continue to bear interest at the contractually agreed-upon rate of ten percent (10%)) and $230,361.78 in attorney's fees and costs (which shall bear interest at the statutory judgment rate). This order closes this case.

IT IS SO ORDERED.

March 31, 2006                        s/ Joseph F. Anderson, Jr.
Columbia, South Carolina           United States District Judge